```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
SHERRY SCALERCIO-ISENBERG,                                  :
                                                            :
                              Plaintiff,                    :
                                                            :        16-CV-8494 (VSB)
                - against -                                 :
                                                            :        OPINION & ORDER
                                                            :
PORT AUTHORITY OF NEW YORK AND                              :
NEW JERSEY and PATRICK FOYE,                                :
                                                            :
                              Defendants.                   :
------------------------------------------------------------X
```

Appearances:

Sherry Scalercio-Isenberg
Sparta, New Jersey
*Plaintiff Pro Se*

Christopher J. Neumann
Port Authority Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of the Port Authority of New York and New Jersey (the "Port Authority") and Patrick Foye, former Executive Director of the Port Authority, (collectively, "Defendants") for judgment on the pleadings as to all claims in the Amended Complaint of Plaintiff Sherry Scalercio-Isenberg under Federal Rule of Civil Procedure 12(c). Plaintiff brings claims against Defendants for disability discrimination under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. Because claims cannot be brought under Title II of the ADA or § 504 of the Rehabilitation Act for damages against Defendant Foye in his individual capacity or in his official capacity, or alternatively, claims asserted against Defendant Foye in his official capacity would be redundant to the claims against the Port

Authority, Defendants' motion to dismiss with respect to claims against Defendant Foye is GRANTED. However, because Plaintiff plausibly alleges that she has been denied meaningful access, Defendants' motion to dismiss with respect to claims against the Port Authority is DENIED.

I. **Background**[1]

Plaintiff is a commuter who utilizes the Lakeland bus line at the Port Authority to travel to and from Sparta, New Jersey on a regular basis. (Am. Compl. 8.)[2] On or about September 15, 2015, the Port Authority moved the Lakeland bus line from gates 402/403, which were accessible by elevator, to gates 206/207. (Compl. 5.)[3] Gates 206/207 are accessible in two ways: (1) by taking an escalator and multiple flights of stairs, or (2) by taking the elevator to gate 403 and walking across active bus lanes. (*Id.*)

Plaintiff has a disability on the left side of her body, which prevents her from using an escalator or climbing stairs. (*Id.*) As a result, because the Lakeland bus now departs from gates 206/207, she is forced to walk across active bus lanes as buses are entering and exiting the gates. (*Id.*) There are signs posted in the bus lanes stating "DO NOT ENTER/DANGER ACTIVE BUS LANES." (*Id.* at 9.) Plaintiff alleges that she has missed her bus on several occasions out

---

[1] The following factual summary is drawn from the allegations of the Amended Complaint, (Doc. 84), unless otherwise indicated, which I assume to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). I also assume as true the facts included in Plaintiff's submissions opposing the motion for judgment on the pleadings, as well as her other factual submissions to this Court. *See Henning v. N.Y.C. Dep't of Corr.*, 14-CV-9798 (JPO), 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court—consistent with its duty to liberally construe *pro se* pleadings—will credit Plaintiff's assertion in evaluating the sufficiency of his complaint."). My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's Amended Complaint, filed on February 2, 2018. (Doc. 84.) Because the Amended Complaint is not consecutively paginated, the page numbers cited correspond to the page numbers assigned by the Electronic Court Filing ("ECF") system.

[3] "Compl." refers to Plaintiff's Complaint, filed on November 1, 2016. (Doc. 1.) Because the Complaint is not consecutively paginated, the page numbers cited correspond to the page numbers assigned by the ECF system.

2

of fear about walking across the bus lanes, forcing her to take a later bus, (*id.*), or a car service costing $350.00 to her home, (Compl. Att. Ex. 2).[4]

On an unspecified date, Lakeland bus lines informed Defendant Foye, then-Executive Director of the Port Authority, that one of Lakeland's regular customers was unable to use the escalator and stairs to get to gates 206/207. (Compl. 5.) An unnamed representative from Lakeland informed Plaintiff on an unspecified date that the Port Authority's response was "basically, too bad," and that Plaintiff would "have to figure out another way to get to gates 206/207." (*Id.*)

On August 8, 2016, it appears that Plaintiff submitted a message to the web feedback portal on the Port Authority website informing the Port Authority that she had "[f]iled [a] complaint at ADA.gov[,] contacted Governor Christie[,] and today emailed Channel 12 news." (Compl. Att. Ex. 4, at 2.) The next day, Brian Jacob, a Manager for Customer Programs and Services at the Port Authority, emailed Plaintiff to follow up on a telephone conversation with Plaintiff from the day before. (*Id.* at 1.) Jacob informed Plaintiff that:

> [B]us companies can make arrangements for disabled passengers to board vehicles at one of the terminal's ADA-compliant gates. You can pre-arrange your travel times directly with Lakeland, who can then pick you up at Gate 421 before picking up passengers at its regular Gates 206/207. If you were to miss your bus for some reason, you can always speak with a platform supervisor or use any of the house phones to contact the control center and arrange for the next available bus. Lakeland can be reached at 973-366-0600. You'll need to speak with them directly regarding their specific check-in policy (i.e., you may need to call 1 hour beforehand to confirm expected pickup times).

(*Id.*) The same day, Plaintiff responded to Jacob, stating that "[g]oing to Gat[e] 421 is

---

[4] "Compl. Att." refers to documents submitted by Plaintiff on November 4, 2016, (Doc. 2), and November 18, 2016, (Doc. 3). Because these were filed in the days following Plaintiff's filing of her Complaint, I construe them as attachments to her Complaint. The exhibit numbers cited correspond to Plaintiff's handwritten numbering of exhibits.

3

UNACCEPTABLE . . . I waited almost 2 hours for a bus, then once . . . a bus came, it was the wrong Bus." (*Id.*)  The next day, Plaintiff forwarded Jacob's email and her response to William Carnathan of the Department of Justice, informing him that she "tried the [Port Authority's] proposal" to pre-arrange her travel time with Lakeland, but it "doesn't work." (*Id.*)  On July 3, 2017, Plaintiff received a letter from the Port Authority further informing her that in order to pre-arrange a pick-up from gate 421, she should arrive at the gate twenty to thirty minutes prior to her bus's scheduled departure time.  (Pl.'s Opp. 4.)[5]

Gate 421—the ADA-compliant gate that the Port Authority proposed Plaintiff could use to access her bus—is at the end of the bus terminal and is the furthest gate from the elevators.  (Compl. Att. Ex. 11.)  It "is located down a dark corridor[,] . . . is isolated[,] [h]omeless people congregate there[, and] [t]here is no security."  (Pl.'s Supp. Opp. 3.)[6]  There is an "unlocked, unsecured door to the outside street" at the gate, and there are "no other business passengers within 10-12 gates."  (Compl. Att. Ex. 11.)  Plaintiff claims that using gate 421 "creates another serious safety risk to [her], especially as a woman by [her]self."  (*Id.*)  According to Plaintiff, the Port Authority's proposed alternative arrangement has "increased [her] commute time by approximately an hour every day."  (Compl. 5.)

## II. Procedural History

Plaintiff commenced this action by filing her Complaint against Defendant Foye on November 1, 2016.  (Doc. 1.)  Following the commencement of her action, Plaintiff filed several exhibits to accompany her Complaint.  (Docs. 2, 3.)  Defendant Foye filed his Answer on

---

[5] "Pl.'s Opp." refers to Plaintiff's Opposition to Defense Counsel's Motion to Dismiss, filed on August 1, 2017. (Doc. 48.)

[6] "Pl's Supp. Opp." refers to Plaintiff's Supplemental Response to Defendants' Motion to Dismiss, filed on August 14, 2017.  (Doc. 51.)

4

December 15, 2016. (Doc. 6.) After I held an initial pretrial conference on March 17, 2017, (Dkt. Entry Mar. 17, 2017), the parties engaged in discovery. Before the completion of discovery, Plaintiff filed a motion for summary judgment on April 5, 2017, (Doc. 16), which I denied without prejudice to allow the parties to complete discovery, (Doc. 17). Plaintiff again moved for summary judgment on May 24, 2017, (Doc. 23), and again, I denied her motion without prejudice to allow the completion of discovery, (Doc. 25).

On June 20, 2017, Defendant Foye requested a pre-motion conference in anticipation of filing a motion to dismiss Plaintiff's claims against Defendant Foye and a motion to amend his Answer to allege claims against non-party Lakeland Bus Lines, Inc. (Doc. 29.) Rather than holding a pre-motion conference, I instructed the parties to meet and confer to propose a briefing schedule by June 28, 2017. (Doc. 31.) The parties were unable to agree to a briefing schedule, (Doc. 34), so I entered one on June 30, 2017 and instructed Plaintiff to file a pre-motion letter by July 7, 2017 if she intended to file a dispositive motion, (Doc. 35). On July 3, 2017, Plaintiff filed a letter indicating that she anticipated filing an opposition to Defendant Foye's anticipated motion to dismiss and motion to amend his Answer, as well as her own motion for summary judgment. (Doc. 37.) On July 5, 2017, I instructed Plaintiff that her oppositions should be filed in accordance with the briefing schedule I entered on June 30, 2017, as should her anticipated motion for summary judgment. (Doc. 39.)

On July 31, 2017, Defendant Foye filed a motion for judgment on the pleadings, (Doc. 45), along with the Declaration of Christopher J. Neumann, (Doc. 46), and a memorandum of law in support, (Doc. 47).[7] Defendant Foye did not file a motion to amend his Answer. The next

---

[7] Defendant Foye filed a corrected memorandum of law in support on August 2, 2017 to add a page missing from the table of authorities. (Doc. 49.)

5

day, Plaintiff filed her opposition. (Doc. 48.) On August 14, 2017, Plaintiff filed a "supplemental response" to Defendant Foye's motion for judgment on the pleadings, which responded to Defendant Foye's motion and also requested leave to file an amended complaint to add the Port Authority as a defendant. (Doc. 51.) Plaintiff noted that the joinder of the Port Authority "would be the only change" to the Complaint. (*Id.*) Defendant Foye opposed Plaintiff's request to amend her Complaint on August 18, 2017, (Doc. 53), and on August 28, 2017, he filed his reply in further support of his motion for judgment on the pleadings, (Doc. 57).

On December 13, 2017, I held a status conference to address a discovery dispute between the parties, as well as Plaintiff's request to file an amended complaint. (*See* Doc. 74.) At the conference, I instructed counsel for Defendant Foye to, among other things, provide responses to certain questions I had regarding whether Defendant Foye or the Port Authority would suffer any prejudice and/or seek additional discovery if I granted Plaintiff leave to file an amended complaint. (*Id.*; *see also* Doc. 80.) Counsel for Defendant Foye filed a letter on December 20, 2017, claiming that the Port Authority would suffer prejudice if I granted Plaintiff leave to amend, but stating—if I permitted the amendment—that the Port Authority would not seek additional discovery and that it would join in Defendant Foye's pending motion for judgment on the pleadings. (Doc. 76.) Plaintiff filed her response to Defendant Foye's letter on December 20, 2017. (Doc. 77.) On January 24, 2018, I granted Plaintiff leave to file an amended complaint solely to add the Port Authority as a defendant. (Doc. 80.) I also instructed the Port Authority to file a document on the docket joining in Defendant Foye's pending motion for judgment on the pleadings. (*Id.*)

On February 1, 2018, Plaintiff filed a letter purportedly amending her Complaint. (Doc. 81.) By endorsement on February 2, 2018, I instructed Plaintiff that she may not amend her

6

Complaint by letter, but rather should file a separate amended complaint adding the Port Authority as a defendant by February 9, 2018. (Doc. 83.) Plaintiff filed her Amended Complaint, which added the Port Authority as a Defendant, on February 2, 2018. (Doc. 84.) On March 29, 2018, I entered an order instructing the Port Authority to file a letter indicating whether it intended to join Defendant Foye's motion, (Doc. 96), and on March 30, 2018, the Port Authority filed a letter indicating that it joined in Defendant Foye's motion, (Doc. 97).

### III. Legal Standards

#### A. *Motion to Dismiss*[8]

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion under Rule 12(b)(6), a court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiff's] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (per curiam); *accord Kassner*, 496 F.3d at 237. A

---

[8] After Defendant Foye filed his motion for judgment on the pleadings, Plaintiff filed an Amended Complaint, which neither Defendant has yet answered. Because motions brought pursuant to Rule 12(c) can only be filed "[a]fter the pleadings are closed," Fed. R. Civ. P. 12(c), I construe Defendants' motion as a motion to dismiss under Rule 12(b)(6).

7

complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). A "complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 10(c). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

### B. *Pro se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (internal quotation marks omitted). Consistent with the duty to liberally construe a pro se plaintiff's pleading, a court can also consider allegations contained in opposition papers. *See Henning*, 2016 WL 297725, at *3; *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering affidavit submitted in opposition to defendants' motion to dismiss in reviewing district court's dismissal of pro se plaintiff's claims). Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory factual allegations. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). In other words, the "duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387

(S.D.N.Y. 2009) (internal quotation marks omitted).

## IV. Discussion

Plaintiff alleges claims for disability discrimination under Title II of the ADA and the Rehabilitation Act.[9] Defendants argue that Plaintiff's claims should be dismissed because: (1) Plaintiff cannot bring Title II or Rehabilitation Act claims for monetary damages against Defendant Foye in his individual or official capacities, and (2) Plaintiff fails to state a claim because she acknowledges that she has been provided with meaningful access to bus services, and because Plaintiff has failed to allege that the bus gate changes were motivated by discriminatory animus or ill will. I address these arguments in turn.

### A. *Claims Against Defendant Foye*

Defendants contend that Plaintiff's Title II and Rehabilitation Act claims against Defendant Foye should be dismissed because individuals are not proper defendants in claims for monetary damages brought under Title II and the Rehabilitation Act. (Defs.' Mem. 3–5.)[10] The Second Circuit has held that "neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *see also Andino v. Fischer*, 698 F. Supp. 2d 362, 380 (S.D.N.Y. 2010) ("[B]ecause the ADA targets public entities, individuals cannot be

---

[9] Plaintiff's Amended Complaint also purports to allege claims under 42 U.S.C. § 1981 and § 1983. (Am. Compl. 2.) However, Plaintiff sought leave to amend solely to join the Port Authority as a defendant, (Doc. 51), and the scope of leave that I granted was limited to joining the Port Authority, (Doc. 80). Therefore, I find that any claims Plaintiff attempts to bring under 42 U.S.C. § 1981 or § 1983 in the Amended Complaint fall outside the scope of the leave that I granted, and they are therefore dismissed and struck from the Amended Complaint as immaterial pursuant to Federal Rule of Civil Procedure 12(f). *See Kuntz v. N.Y. State Bd. of Elections*, 924 F. Supp. 364, 367 (N.D.N.Y. 1996) (dismissing causes of action in amended complaint that exceeded scope of court's permission to amend and striking them as immaterial under Rule 12(f)), *aff'd sub nom. Kuntz v. N.Y. State Senate*, 113 F.3d 326 (2d Cir. 1997).

[10] The Amended Complaint does not indicate whether Plaintiff brings suit against Defendant Foye in his individual or official capacity. I construe the Amended Complaint as alleging claims against Defendant Foye in both capacities. "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, filed on August 2, 2017. (Doc. 49.)

named as defendants in their individual capacities." (citation omitted)). Therefore, any claims brought against Defendant Foye in his individual capacity under Title II or the Rehabilitation Act are dismissed.

Whether Defendant Foye is subject to suit in his official capacity requires a more searching inquiry. *See Monroe v. Gerbing*, No. 16-CV-2818 (KMK), 2017 WL 6614625, at *15 (S.D.N.Y. Dec. 27, 2017) ("Whether individuals can be sued for damages under the ADA or Rehabilitation Act in their *official capacities* . . . is unsettled in the Second Circuit." (citation omitted)). Numerous district court judges in this Circuit have held that official capacity suits for monetary damages are not cognizable under the ADA or Rehabilitation Act. *See, e.g.*, *Sutherland v. N.Y. State Dep't of Law*, No. 96 CIV. 6935(JFK), 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Nor can individuals be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities."), *aff'd*, 216 F.3d 1073 (2d Cir. 2000); *Maus v. Wappingers Cent. Sch. Dist.*, 688 F. Supp. 2d 282, 302 n.10 (S.D.N.Y. 2010) ("[I]ndividuals cannot be named as defendants in ADA or Rehabilitation Act suits in their official or representative capacities." (internal quotation marks omitted)); *Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 441 (S.D.N.Y. 2004) ("Individuals cannot be named as defendants in ADA suits in either their official or representative capacities."); *Myers v. New York-Dep't of Motor Vehicles*, No. 06-cv-4583 (NG)(VMS), 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[T]here is no individual liability under . . . Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."). Other courts have held that official capacity lawsuits are permissible under the ADA and Rehabilitation Act. *See, e.g.*, *Keitt v. New York City*, 882 F. Supp. 2d 412, 456–57 (S.D.N.Y. 2011) ("[I]ndividuals can be sued in their official capacities under [the ADA and Rehabilitation Act]."); *Cole v. Goord*, No. 05 Civ.

2902(GEL), 2009 WL 2601369, at *4–5 (S.D.N.Y. Aug. 25, 2009) (holding that an individual may be sued in her official capacity because she is effectively named as the public entity).

Courts in the latter group rest their conclusion on the premise that an official-capacity suit naming an individual is effectively a suit against the government entity. *See Cole*, 2009 WL 2601369, at *4. In *Cole*, the court relied on the Second Circuit's holding in *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003)—which ruled, in the context of a suit for injunctive relief, that because "[t]he real party in interest in an official-capacity suit is the government entity . . . it is irrelevant whether the ADA would impose individual liability on the officer sued; since the suit is in effect against the 'public entity,' it falls within the express authorization of the ADA," *id.* at 288—to conclude that the ADA does not preclude suits for monetary relief against individuals in their official capacity. *See Cole*, 2009 WL 2601369, at *4–5. Because suing a state officer in his official capacity is the equivalent of suing the public entity, *see Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993) (holding that "[t]o the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state), the line of reasoning employed by the *Cole* court would lead to the conclusion that Plaintiff's claims against Defendant Foye in his official capacity are cognizable under the ADA and Rehabilitation Act.[11]

However, I need not resolve the question of whether official-capacity suits for monetary relief are available under the ADA or Rehabilitation Act because the answer to the question

---

[11] In many circumstances, a state's sovereign immunity under the Eleventh Amendment would preclude a suit against the public entity, and thus preclude a suit against the public official as well. However, the Supreme Court has held that the Port Authority is not protected against federal statutory claims by the cloak of the Eleventh Amendment. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 52 (1994); *see also Caceres v. Port Auth. of N.Y. & N.J.*, 631 F.3d 620, 625 (2d Cir. 2011) ("[T]he Port Authority lack[s] Eleventh Amendment sovereign immunity from federal statutory claims."). Therefore, the Eleventh Amendment would not present an obstacle to Plaintiff's action.

11

under either theory would lead to the dismissal of Plaintiff's claims against Defendant Foye. Even if I concluded that such claims were cognizable, the claims against Defendant Foye would be redundant of the claims against the Port Authority. Because Defendant Foye in his official capacity acts as a representative of the Port Authority, which is also named as a defendant here, there is no reason to permit duplicate claims to proceed against both parties. *See Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000) ("Because plaintiff is able to assert his ADA and Rehabilitation Act claims against [the state entity] directly, I find that there is no justification for allowing plaintiff to also assert [the same] claims against the individual defendants in their official capacities."). Therefore, I dismiss Plaintiff's official capacity claims against Defendant Foye.

### B. *Claims Against the Port Authority*

Defendants do not contest that Plaintiff's claims are cognizable against the Port Authority. Rather, they argue that Plaintiff's Amended Complaint fails to state a claim because (1) she acknowledges that the Port Authority has provided her meaningful access to bus services, and (2) she fails to allege discriminatory animus or ill will.

#### 1. Applicable Law

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act similarly provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Both

statutes prohibit discrimination against disabled individuals "by requiring that they receive reasonable accommodations that permit them to have access to and take meaningful part in public accommodations." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 187 (2d Cir. 2015) (internal quotation marks omitted). Because both the ADA and Rehabilitation Act are remedial legislation, courts are to construe them broadly to effectuate their remedial purpose. *See Henrietta D.*, 331 F.3d at 279. "As the standards for actions under these provisions of the ADA and the Rehabilitation Act are generally equivalent," I analyze Plaintiff's claims together.[12] *Dean*, 804 F.3d at 187.

To establish a prima facie violation under both statutes, a plaintiff must allege:

> (1) [T]hat she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of her disability.

*Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted), *opinion corrected*, 511 F.3d 238 (2d Cir. 2004). The third element requires a plaintiff to show that she was denied "reasonable accommodations to enable meaningful access to services, programs, and activities." *Bernstein v. City of New York*, 621 F. App'x 56, 59 (2d Cir. 2015) (summary order) (internal quotation marks omitted). A plaintiff need not allege that she is entirely precluded from accessing a benefit; rather, difficulty in accessing a benefit is sufficient to sustain a reasonable accommodation claim. *See Henrietta D.*, 331 F.3d at 277 ("[T]he demonstration that a disability makes it difficult for a plaintiff to access benefits that are available to both those with and without disabilities is sufficient to sustain a claim for a

---

[12] Claims under the Rehabilitation Act require a showing that the defendant receives federal funding. 29 U.S.C. § 794(a). Defendants do not dispute that the Port Authority receives federal funding, so I consider Defendants to have conceded that issue for purposes of this motion.

13

reasonable accommodation."). "Determining the reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder." *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72–73 (2d Cir. 2016).

"Individuals may be deprived of meaningful access to public programs due to architectural barriers or a public entity's failure to modify existing facilities and practices." *Disabled in Action v. Bd. of Elections of New York*, 752 F.3d 189, 197 (2d Cir. 2014). When a public entity attempts to provide an accommodation for disabled individuals, "the accommodation must overcome structural impediments and non-trivial temporal delays that limit access to programs, services, and activities." *Wright*, 831 F.3d at 72. "An accommodation is not plainly reasonable if it is so inadequate that it deters the plaintiff from attempting to access the services otherwise available to him." *Id.*

### 2. Application

Defendants do not contest that Plaintiff is a qualified individual with a disability or that the Port Authority is subject to the ADA and Rehabilitation Act. Rather, Defendants contend that they have provided Plaintiff meaningful access to her desired bus service by informing her of her ability to pre-arrange a pick-up at gate 421. (Defs.' Mem. 5–6.) Plaintiff disagrees, arguing that Defendants' proposed accommodation lengthens her commute by at least an hour and presents certain dangers due to the lack of light, lack of security, and isolation of the area in which she would have to wait on her bus for extended periods of time. (Pl.'s Opp. 3–4.)

Taking into account the low bar for Plaintiff to proceed at this stage of the litigation, as well as the remedial purpose of the ADA and Rehabilitation Act, I find that Plaintiff plausibly alleges that she has been denied meaningful access. Plaintiff is not required to allege a total denial of or exclusion from services. *See Disabled in Action*, 752 F.3d at 198 (holding that

plaintiff is not required to show she was "completely prevented from enjoying a service, program, or activity" (citation omitted)). Rather, she must allege "simply . . . that a disability makes it difficult for [her] to access benefits." *Henrietta D.*, 331 F.3d at 277.

There can be little dispute that Plaintiff plausibly alleges that her disability makes it difficult for her to access her bus line. The relocation of the Lakeland bus from gates 402/403 to gates 206/207—based upon the allegations in the Amended Complaint and Plaintiff's opposition—has resulted in Plaintiff having to choose from one of three options to get to her bus: (1) taking several flights of stairs and an escalator, which her disability prevents her from doing; (2) walking across active bus lanes, through which the Port Authority prohibits pedestrians to walk; or (3) pre-arranging a pick-up at gate 421, which requires her to wait in an area that Plaintiff perceives as dangerous and considerably extends the length of her commute. Options (1) and (2) effectively preclude her from reaching her bus. Option (3) makes it more difficult for her to access bus services at the Port Authority, and occasionally deters her from taking the bus altogether. *See Celeste v. E. Meadow Union Free Sch. Dist.*, 373 F. App'x 85, 88 (2d Cir. 2010) (summary order) (finding that plaintiff presented sufficient evidence for a jury to find that he was denied meaningful access when "minor architectural barriers in the school forced him to take a ten minute detour each way in order to reach and return from the athletic fields behind the school"); *Wright*, 831 F.3d at 74–75 (holding that evidence of, among other things, requirement to book mobility aide "well in advance" of when it was needed presented sufficient issue of fact for jury to consider); *Kane v. Carmel Cent. Sch. Dist.*, No. 12 CV 5429(VB), 2014 WL 7389438, at *10 (S.D.N.Y. Dec. 15, 2014) (finding that plaintiff established the lack of meaningful access where "difficult and dangerous entrances and ramps posed barriers to her ability to access the public high school where she worked" and deterred her from continuing to work there).

Therefore, I find that Plaintiff has plausibly alleged the lack of meaningful access.

Defendants contend that to make out a disability discrimination case under Title II or the Rehabilitation Act, Plaintiff must also allege that her mistreatment was motivated by discriminatory animus or ill will. (Defs.' Mem. 5–6.) Defendants cite *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590 (S.D.N.Y. 2010), in support of their position.

*Elbert* held that a plaintiff must establish discriminatory animus or ill will in order to establish that she was denied benefits because of her disability. *See id.* at 595 (citing *Garcia*, 280 F.3d at 112). However, the holding in *Garcia* concerned Congress's authority under § 5 of the Fourteenth Amendment to abrogate a state's Eleventh Amendment sovereign immunity and subject the state to monetary suits by private plaintiffs under Title II of the ADA. *See Garcia*, 280 F.3d at 107–13. The court held that Congress's authority under § 5 extended only far enough to permit private plaintiff suits for monetary damages against states when the plaintiff established discriminatory animus or ill will. *See id.* at 111–12 ("The question . . . is how Title II monetary claims against the states can be limited so as to comport with Congress's § 5 authority. The answer . . . is to require plaintiffs . . . to establish that the Title II violation was motivated by discriminatory animus or ill will based on the plaintiff's disability.").[13] *Elbert*'s reliance on *Garcia* in holding that discriminatory animus or ill will must be established by plaintiffs in Title II or Rehabilitation Act suits for disability discrimination, therefore, was limited to the context of suits against state entities protected by the Eleventh Amendment's grant of sovereign immunity.

---

[13] I note that after the Supreme Court's rulings in *Tennessee v. Lane*, 541 U.S. 509 (2004), and *United States v. Georgia*, 546 U.S. 151 (2006), it is unclear whether *Garcia*'s requirement of establishing animus or ill will to abrogate a state's Eleventh Amendment immunity remains. *See Press v. State Univ. of N.Y.*, 388 F. Supp. 2d 127, 132 (E.D.N.Y. 2005) (noting that after *Lane*, "[c]ourts are divided as to whether the *Garcia* standard [requiring discriminatory animus or ill will] still applies to Title II cases against a state"); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 323 n.2 (S.D.N.Y. 2007) ("It is far from clear whether the discriminatory animus requirement remains in place following the Supreme Court's decisions in *Lane* and *Georgia*.").

16

Here, as mentioned, the Port Authority is not protected by the Eleventh Amendment against federal statutory claims for monetary damages by private plaintiffs.[14] *Hess*, 513 U.S. at 52; *see also Caceres*, 631 F.3d at 625 ("[T]he Port Authority lack[s] Eleventh Amendment sovereign immunity from federal statutory claims." (emphasis omitted)). Therefore, the requirement in *Garcia* of establishing discriminatory animus or ill will is inapplicable to Plaintiff's claims, Plaintiff need not allege discriminatory animus or ill will, and Plaintiff has adequately alleged disability discrimination claims under Title II of the ADA and the Rehabilitation Act. *See Goonewardena*, 475 F. Supp. 2d at 324 (determining whether plaintiff alleged a Title II ADA violation without requiring allegations of animus or ill will).

## V. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to claims against Defendant Foye and DENIED with respect to claims against the Port Authority.

The parties are directed to meet and confer with regard to the status of discovery, and provide the Court with an update regarding discovery on or before April 13, 2018. The Clerk's Office is respectfully directed to mail a copy of this Opinion and Order to the pro se Plaintiff and terminate the open motion at Document 45.

SO ORDERED.

---

[14] Although the Port Authority is not protected by Eleventh Amendment immunity, I reiterate that Defendants do not dispute that it is a "public entity" covered by the ADA. *See Kasten v. Port Auth. of N.Y. & N.J.*, No. 98-CV-4988, 2002 WL 31102689, at *2 (E.D.N.Y. Sept. 10, 2002) ("[I]t is undisputed that the Port Authority, as an instrumentality of New York and New Jersey, is a public entity subject to Title II [of the ADA]."); *see also* 42 U.S.C. § 12131(1).

17

Dated: March 31, 2018
   New York, New York

                     _____
                     Vernon S. Broderick
                     United States District Judge